## Board of Mayor and Aldermen of Town of Waveland v. Moreau.

[69 South. 214.]

1. Levees. *Constitutional provisions. Validity. .Term of officers. Issuance of bonds. Assessments of benefits. Statutes.*

   Chapter 275, Laws 1914, providing for the organization of sea wall districts is not unconstitutional, because the act does not fix the term of office of the commissioners, since section 3456, Code 1906, automatically fixes "the terms of office of all officers not otherwise provided for by law," at four years.

2. Levees. *Issuance of bonds. Assessment of benefits.*

   Under chapter 275, Laws 1914, providing for the organization of sea wall districts, there must be an assessment before the board of supervisors is empowered to authorize the issuance of bonds.

Appeal from the chancery court of Hancock county. Hon. J. M. Stevens, Chancellor.

Suit by the board of mayor and aldermen of the town of Waveland against Chas. G. Moreau and others, commissioners of Sea Wall District No. 1, Hancock county for an injunction. From a dismissal of the bill, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*McDonald & Marshall,* for appellant.

Appellants contend that said law is unconstitutional. Said commissioners are officers, and their tenure of office is for no "specified period." This violates section 20 of the state Constitution. *Houston* v. *Royston,* 7 Howard, 543; *Monette* v. *State,* 91 Miss. 662. Chapter 275 of the Laws of 1914, does not fix any term of office, and section 3456, Code of 1906, being a general statute would determine the tenure of said commissioners, did not section 22 of said chapter leave to the commis-

sioners to determine when their "services are no longer necessary." In this age officers getting five dollars a day, without limitation as to number of days they can serve, do not get great fame and notoriety by committing official suicide.

Defendants have no right to issue bonds under said Act, and make an assessment, upon the real property, of a tax, until they shall have complied with section 7 of said chapter. The assessed valuation of the property of the district is one hundred and seventy-two thousand dollars. They have been authorized to issue bonds and evidences of indebtedness to the amount of sixty thousand dollars, which amounts to thirty-four per cent. of the assessed value of the property of the district. No one can say that this will be sufficient to do the work, because there have been no investigations, no surveys, no estimate, no assessments of. benefits of damages, indeed defendants are now absolutely without knowledge of what it will cost to work. Indeed they are without knowledge of what work they propose to do, because they have no plans or specifications prepared or adopted. They are authorized to pledge the assessments for the payment of the bond by section 15, but there has been no assessment made, either as to benefits or damages. These defendants have done nothing under section 7 of said chapter, nor have they done anything under section 4, except to organize and take the oath of office. No engineers have been employed, nor have they given any bond, nor have defendants furnished themselves with any information as to the character of the work which they propose to do, and the probable cost of the same. They can't say sixty thousand dollars is enough, nor what they are going to do, nor what it will cost to do it. It may be more than is required, but they do not know it, because they are without knowledge. The issuance of bonds is premature at this stage, and is placing the cart before the horse, and the law

never contemplated and does not authorize the issuance of bonds until they have determined on the character of the work to be done, the probable costs of the same, and the assessment of the property as to betterments and as to damages.

This law turns commissioners loose without brakes, violating the spirit of section 80 of the Constitution, and they are given unlimited authority to tax property in the district for its full value and even in excess; the only reason given being that it is necessary to preserve and protect from destruction the property of the district. No question of public health is involved. Under the guise of preserving property, they are given the power of destruction, by unlimited taxation.

How can an assessment of betterments be placed on the streets of the appellants? What rule could be applied in fixing a betterment on a street where the right involved is simply an easement of the general public? Private property can have a value, because it can be sold or rented and an income realized.

Chapter 275, while to a great extent a copy of the Drainage Act, being chapter 195 of the Laws of 1912, has this important difference; the latter requires the board of supervisors to appoint engineers to make investigations, and reports as to the cost of the contemplated work, by which each property owner was advised of his *pro rata* share of the probable cost; which reports were placed on file and notice given to taxpayers, prior to the creation of the district. Chapter 275 contains no such provision, nor has any such information been given to property owners. The sea wall district is formed without any knowledge as to the character of the work, or its probable cost. While this is in accordance with chapter 275, yet we insist that the sea wall commissioners have no right to issue bonds as a next step, without taking any of the steps the law authorizes, to determine the character of the work which they propose

to do, and the probable cost of same. The amount of bonds issued might be double what is necessary, or it might not be half the amount required. We respectfully submit the learned chancellor erred in sustaining the demurrer and dismissing the bill.

*Robert L. Genin,* for appellee.

The law attached is practically a copy of chapter 195 of the Laws of 1912, and the law in this case was only changed in terms so as to apply to sea walls in place and stead of drainage districts as provided by chapter 195 of the Laws of 1912.

The case of *Jones* v. *Belzoni Drainage District,* 59 So. 921, and the case of *Cox* v. *Wallace,* 100 Miss. 541, 56 So. 461, are decisive of all objections to chapter 275 of the Laws of 1914, excepting four, as raised by bill of complaint filed in this cause.

After investigation of the two cases of *Cox* v. *Wallace,* and *Jones* v. *Belzoni Drainage District, supra,* it seems that the question of the term of office of the commissioners of the drainage district was never raised, and as stated above, the law in question, creating sea wall districts being the same as to the term of office of commissioners as the law passed on in these cases. It is true that chapter 275 of the Laws of 1914 does not provide any term with reference to time; however, section 4 of said act provides the method for removal from office of any and all commissioners by a petition of a majority of the owners of land within the district, who shall also own a majority of the assessed valuation of the property. This can be done without cause or reason, and by the property-holders at any time they see fit and proper. Further, the sea wall commissioners may exist only during the period necessary for the completion of the work, and after that time, can disorganize; the period during which they may hold office may be only six months. However counsel for appellants is correct in his conten-

tion that sea wall commissioners are officers of the state, and so decided in the case of *State* v. *Board of Levee Commissioners,* 51 So. 211, and in the case of *Shelby* v. *Alcon,* 36 Miss. 273. Being a state office and a term not being specified by law, I feel fully satisfied that the proposition is entirely covered by section 3456 of the Code of 1906, which is as follows: ''The term of office of all officers, not otherwise provided for by law, shall be four years and until their successors shall be duly qualified.'' Being officers of the state, the sea wall commissioners hold their term of office under that section for a period of four years. The only two cases in which counsel may contend are applicable to this case, are *Huston* v. *Royston,* 7 Howard 543; and *Monette* v. *State,* 91 Miss. 662. Neither one of these cases are applicable to the case at bar.

The fourth proposition raised by counsel is that the estimated cost of improvement and plans and specifications should be filed before they are authorized to do the work. There is nothing in the act, making this mandatory, and the only requirement made by the law of the board of sea wall commissioners is section 6, which plainly says that as soon as the board has formed its plans and ascertained its costs, they should file them with the clerk of the chancery court. Section 15 of said act authorizes the board of sea wall commissioners to borrow money and issue bonds, and neither one of these two sections and no other section of said act, require any act to be done, or the method of procedure to be adopted by the board of sea wall commissioners before issuing bonds. The same question was raised in the case of *Baird* v. *Phipps,* 66 So. 777; the court held that there were no requirements made by the law in that case, which was a condition precedent to the sale of the bonds after the act had come into force in the district, and the bonds had been legally issued. Matters of this kind are left to the will of the legislature, and if it is a

bad policy to permit any board to issue bonds prior to the time they ascertained the cost of the proposed improvement and to permit the city to be taxed by a commission, the courts cannot be called upon to pass upon the wisdom of a law enacted by a legislature, nor can the court be called upon to pass on a proposition which some parties think might occur under a law.

All acts of the board of supervisors and of the sea wall commission up to this time are legal and the bonds when issued will be valid, and if any rights will be violated by any future acts of the commission, or if after the assessments are made the amount demanded would result in confiscation, all parties have their remedy under the act.

We believe that the entire act is valid and constitutional and that this honorable court should affirm the decree of the chancellor with such a written opinion upon the entire act as this honorable court may think proper to forever settle the validity of the proposed bonds.

Cook, J., delivered the opinion of the court.

The prayer of the bill of complaint in this case is in the following words, viz.:

"The premises considered, complainants pray that process issue for the defendants as required by law; that, on the final hearing of this bill, all the orders and undertakings of the said board of supervisors of Hancock county, under said act aforesaid, and all orders and undertakings of said sea wall commissioners acting under said act, or under any orders of said board of supervisors, be declared null and void and of no effect; that a perpetual injunction be granted, restraining and enjoining said commissioners of sea wall district No. 1 of Hancock county, said Chas. G. Moreau, Geo. R. Rea, John Osoniach, T. H. Herlihy, and William Ruhr, from entering into any contracts for the construction of sea walls in said district, and from assessing the property

of complainant or any other in said sea wall district for any supposed benefits, and from issuing or negotiating bonds or evidence of indebtedness or receiving the money, if any, derived therefrom; and that said sea wall district No. 1 of Hancock county be perpetually restrained and enjoined from assessing any betterment tax; and that said act be declared null, unconstitutional, and void. And, if mistaken in the relief prayed for, complainant prays for such other further general relief as the court may see proper.''

The sea wall district was created under the provisions of chapter 275, Laws of 1914. After the establishment of the district and the appointment of commissioners according to the provision of section 4 of said act, and before the assessment of benefits, the board of supervisors, in response to a petition filed by the commissioners of the sea wall district, authorized the commissioners to borrow sixty thousand dollars and to issue the six per cent. bonds of the district therefor. The bill of complaint, after reciting these facts, prayed for relief as stated above. The sea wall district, defendants below, demurred to the bill, which demurrer was sustained and the bill was dismissed.

There are two questions presented by this appeal: (1) Is chapter 275, Laws of 1914, unconstitutional, because the act does not fix the term of office of the commissioners? (2) Must an assessment of benefits be made as a condition precedent to the power of the board of supervisors to authorize the sea wall commissioners to borrow money and issue the bonds of the district therefor?

The first question is based on the theory that the commissioners are officers in the constitutional sense, and for present purposes this will be conceded. To cover and cure just such statutory omissions, the legislature enacted section 3456, Code of 1906. This section of the Code automatically fixes ''the terms of office of all offi-

cers, not otherwise provided for by law'' at four years. We think therefore that the failure to fix the term. of the officers in question will not invalidate the act.

The act under review is a local improvement law, and the expenses of such works as are contemplated must be charged against the parties specially benefited, and be made a lien on their property. It is altogether probable that some of the lands in the district will receive more benefit than other lands, and it is therefore essential that the benefits be apportioned before the issuance of bonds. The act provides for appeals from the assessment of benefits—and it cannot be known how much each taxpayer will be required to pay until the assessment is made. It is true that section 24 fixes a lien on all lands as a security for the payment of the bonds, but it is also necessarily true that the amount to be charged against each piece of land will be apportioned according to its benefits. In fact, section 9, in express terms, makes it clear that the taxes assessed are to be ''paid by the real property in the district in proportion to the amount of assessments of benefits thereon.''

It will be noted, also, that section 12 of the act limits the levy in these words:

''Provided that the total levy shall in no case exceed the value of the benefits assessed on said property.''

Similar laws were discussed by the supreme court of the United States in *Hager* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

Without going into any detailed analysis of the act in question, it is our opinion that there must be an assessment of benefits before the board of supervisors is empowered to authorize the issuance of bonds.

*Reversed and remanded.*